**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**HAMMOND DIVISION**

| | |
|---|---|
| ADRIAN SANTOS, III, | |
| Plaintiff, | |
| v. | CAUSE NO.: 2:17-CV-273-TLS-APR |
| COUNTY OF LAKE, INDIANA; LAKE COUNTY SHERIFF'S DEPARTMENT; JOHN BUNCICH in his individual capacity; and OSCAR MARTINEZ in his official capacity as Sheriff of Lake County, Indiana, | |
| Defendants. | |

**OPINION AND ORDER**

This matter is before the Court on Lake County's Motion to Dismiss Second Amended Complaint Pursuant to Fed. R. Civ. P. 12(b)(6) [ECF No. 36] as well as the Sheriff Defendants' Motion to Dismiss Second Amended Complaint [ECF No. 40]. For the reasons set forth below, Lake County's motion is denied. The Court grants in part and denies in part the Sheriff Defendants' motion, granting only the dismissal of the claims brought against Oscar Martinez in his official capacity as Sheriff of Lake County, Indiana.

**BACKGROUND**

Plaintiff Adrian Santos, III filed a Second Amended Complaint [ECF No. 27] on November 3, 2017. Plaintiff was employed as a police officer by the County of Lake, Indiana (Lake County) and/or the Lake County Sheriff's Department (Sheriff's Department) from August 2012 until his discharge in 2015. Sec. Am. Compl. ¶ 1, ECF No. 27. Plaintiff challenges his discharge under the Americans with Disabilities Act, 42 U.S.C. § 12112(b)(4); the

1

Rehabilitation Act, 29 U.S.C. § 794(a); and the First and Fourteenth Amendments to the United States Constitution pursuant to 42 U.S.C. § 1983. *Id.* ¶¶ 1, 3.

The following factual allegations are taken from the Second Amended Complaint. Plaintiff is a former employee (police officer) of Lake County and/or the Sheriff's Department. *Id.* ¶ 4. Lake County and/or the Sheriff's Department is an "employer" as defined in Title I of the ADA, 42 U.S.C. § 12111(5), and these entities receive federal financial assistance. *Id.* ¶ 5(a). Lake County paid the salary of Plaintiff and Defendant John Buncich, as well as other county police officers. *Id.* Sheriff Buncich had the statutory authority to dismiss county police officers under Indiana Code § 36-8-10-11(a). *Id.* ¶ 5(b). Lake County is responsible for paying any judgment awarding compensatory damages against Sheriff Buncich, and it may pay any punitive damages awarded against him. *Id.* ¶ 5(a).

Defendant Buncich is a Democrat and was elected Sheriff of Lake County in November 2010 and again in November 2014. *Id.* ¶ 5(c). Prior to the Democratic primary election in May 2014, Plaintiff publicly supported Oscar Martinez, one of Buncich's opponents. *Id.* ¶ 13. Buncich was removed from office on August 24, 2017. *Id.* ¶ 5(c).

As Sheriff, Buncich had the authority to place officers on leave; to file disciplinary charges against officers with the Sheriff's Merit Board; to recommend discipline, including discharge, to the Merit Board; and to dismiss or discharge Lake County police officers after a hearing with the Merit Board. *Id.*

On May 29, 2014, Plaintiff was arrested and charged with misdemeanor domestic battery and felony strangulation based on an incident involving him and his wife on May 28, 2014. *Id.* ¶ 6. Subsequently, Sheriff Buncich charged Plaintiff with four counts alleging violations of the Sheriff's Merit Board Rules: (1) violating state law, (2) conduct unbecoming a police officer, (3)

violating Sheriff's Department rules and regulations, and (4) committing acts that bring the Department into disrepute. *Id.* ¶ 7. Sheriff Buncich placed Plaintiff on administrative leave, with pay. *Id.*

In November 2014, while on administrative leave, Plaintiff and his wife learned that their oldest son, age 14, had stage-4 brain cancer, with less than five years to live. *Id.* ¶ 11. The Sheriff's Department was notified of this in December 2014. *Id.*

In March 2015, the Lake County Prosecutor dropped the criminal charges against Plaintiff. *Id.* ¶ 6. Subsequently, Plaintiff informed Sheriff Buncich that the charges had been dismissed, that his son's condition was getting worse, and that he might need to take time off to deal with his son's situation. *Id.* ¶ 11. Sheriff Buncich told Plaintiff to await the outcome of the Merit Board proceedings and go from there. *Id.*

On April 20, 2015, Plaintiff was stopped by an Indiana State Police trooper who issued two traffic citations for speeding and failure to signal lane change and also issued a warning for improper window tinting. *Id.* ¶ 8.

In May 2015, Plaintiff appeared before the Merit Board and was presented with four additional counts brought by Sheriff Buncich related to the traffic citations and warning. *Id.* ¶ 9. The counts alleged violations of four Merit Board Rules: (1) violating state law, (2) conduct unbecoming an officer, (3) violation of Sheriff's Department rules and regulations, and (4) committing acts that bring the Department into disrepute. *Id.* At that time, Sheriff Buncich's attorney informed Plaintiff that Sheriff Buncich would recommend discharge if Plaintiff did not resign. *Id.* On June 2, 2015, the Lake County Prosecutor dismissed the traffic charges. *Id.*

On July 16, 2015, the Merit Board found Plaintiff guilty of conduct unbecoming a police officer and failing to treat another officer civilly and courteously. *Id.* ¶¶ 7, 9. The Merit Board

met on July 21, 2015, and heard additional evidence related to punishment. *Id.* ¶ 10. In a written order entered on August 12, 2015, the Merit Board accepted Sheriff Buncich's recommendation and found just cause for dismissal of Plaintiff. *Id.* Plaintiff's appeal of the Merit Board decision was affirmed by the Lake Superior Court in a judgment entered on June 20, 2017. *Id.*

Prior to his son's death on June 1, 2016, Plaintiff incurred medical expenses of approximately $1,000,000.00, some of which was paid by Lake County through its self-funded medical benefit for employees and some of which was paid by Medicaid. *Id.* ¶ 12. Approximately $40,000.00 of the medical expenses remains unpaid. *Id.*

Plaintiff alleges that disciplinary decisions and recommendations made by Sheriff Buncich are based on factors other than merit, including political support of Buncich and associations with Buncich. *Id.* ¶ 13. For example, Plaintiff alleges that an agent of Sheriff Buncich informed Plaintiff's attorney in the disciplinary proceedings that Officer Orlich, whose Class D felony charge of official misconduct was dismissed as part of a pre-trial diversion agreement, received a favorable recommendation from Sheriff Buncich, specifically a sixty-day suspension that was approved by the Merit Board, because of Sheriff Buncich's long association with Orlich's father. *Id.*

As Sheriff, Buncich appointed three of the five members of the Merit Board, and Plaintiff alleges that the appointees tend to vote on disciplinary matters in accordance with Sheriff Buncich's recommendation, thereby making Sheriff Buncich the *de facto* decision-maker in Merit Board proceedings related to officer discipline and discharge. *Id.* ¶ 14. Pursuant to Indiana Code § 36-8-10-11(a) and Art. 5, Chapter 1, § 5-1-1 of the Merit Board Rules, Buncich, as sheriff, had the actual authority to discharge Plaintiff after the Merit Board proceedings. *Id.* The discipline of discharge imposed on Plaintiff is harsher than the discipline imposed on other

Sheriff's police officers who were charged with more serious offenses in recent years. *Id.* Plaintiff alleges that this difference in treatment is explained by Plaintiff's support of Oscar Martinez in the May 2014 primary election and by the disability (brain cancer) of Plaintiff's son, which resulted in substantial medical expenses incurred by Lake County. *Id.*

On November 17, 2017, Lake County filed a Motion to Dismiss [ECF No. 36] pursuant to Federal Rule of Civil Procedure 12(b)(6). Plaintiff filed a response [ECF No. 38] on November 30, 2017, and Lake County filed a reply [ECF No. 39] on December 8, 2017. On January 3, 2018, Defendants John Buncich in his individual and official capacities and the Sheriff's Department filed a Motion to Dismiss [ECF No. 40], also under Rule 12(b)(6). Plaintiff filed a response [ECF No. 42] on January 16, 2018, and Defendants Buncich and the Sheriff's Department filed a reply [ECF No. 43] on January 25, 2018.

On May 1, 2019, this matter was reassigned to the undersigned as presiding judge, and the Court subsequently held a telephonic status conference with the parties. *See* ECF Nos. 69–70. On September 30, 2019, and October 12, 2019, respectively, Plaintiff and Lake County each filed a supplemental brief [ECF No. 73, 76] with leave of Court.

## LEGAL STANDARD

A motion to dismiss brought under Rule 12(b)(6) "challenges the viability of a complaint by arguing that it fails to state a claim upon which relief may be granted." *Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 736 (7th Cir. 2014). The Court presumes that all well-pleaded allegations are true, views these well-pleaded allegations in the light most favorable to the plaintiff, and accepts as true all reasonable inferences that may be drawn from the allegations. *Reynolds v. CB Sports Bar, Inc.*, 623 F.3d 1143, 1146 (7th Cir. 2010). Surviving a Rule 12(b)(6) motion "requires more than labels and conclusions . . . . Factual allegations must

be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).

**ANALYSIS**

Lake County seeks dismissal of all of Plaintiff's claims against it, arguing that Plaintiff has not pleaded facts sufficient to establish an agency relationship between the Sheriff and Lake County. In its motion, the Sheriff's Department seeks dismissal of the claims under the ADA and the Rehabilitation Act on the basis that Plaintiff has not stated a claim under either statute. As for the § 1983 claims, both Lake County and the Sheriff's Department argue that Plaintiff has not pleaded sufficient facts for *Monell* liability based on a municipal policy, procedure, or custom. Finally, Defendant Buncich seeks dismissal of the claims against him in his individual capacity based on absolute immunity and dismissal of the claims against him in his official capacity as redundant with the claims against the Sheriff's Department. The Court considers the motions to dismiss as to each of Plaintiff's three legal claims and then turns to the arguments raised by Defendant Buncich.

**A.      Americans With Disabilities Act**

Plaintiff alleges in the Second Amended Complaint that his discharge from his job as a Lake County police officer was based on his support for Oscar Martinez in the May 2014 primary election and on "the disability (brain cancer) of [his] son, which resulted in substantial medical expenses incurred by the County, prior to his death on June 1, 2016." Sec. Am. Compl.

¶ 14. Plaintiff challenges his discharge under Title I of the Americans with Disabilities Act, 42 U.S.C. § 12112(b)(4).

Title I of the ADA provides that "[n]o covered entity shall discriminate against a qualified individual on the basis of disability in regard to . . . the . . . discharge of employees." 42 U.S.C. § 12112(a). The term "discriminate against a qualified individual on the basis of disability" includes "denying equal jobs or benefits to a qualified individual because of the known disability of an individual with whom the qualified individual is known to have a relationship or association." *Id.* § 12112(b)(4). The definition of "covered entity" includes "an employer." *Id.* § 12111(2).

1.    *Lake County*

 In its motion to dismiss, Lake County argues that Plaintiff was not its "employee" for purposes of the ADA because Lake County, and more specifically the Lake County Executive (the Lake County Commissioners), does not have control over the acts of the Sheriff or the Sheriff's officers. Lake County contends that, because it has no control over the Sheriff, there is no agency relationship by operation of state law, and, therefore, Plaintiff does not meet the ADA's definition of "employee."

Title I of the Americans with Disabilities Act defines an "employee" as an "individual employed by an employer." 42 U.S.C. § 12111(4). The Indiana Code provides: "A county police force is established in each county. The members are *employees of the county*, and the sheriff of the county shall assign their duties according to the law." Ind. Code § 36-8-10-4(a) (emphasis added). The statute further provides that "[t]he expenses of the county police force are a part of the sheriff's department budget" and that "the county fiscal body shall determine the budget and salaries." *Id.* § 36-8-10-4(b).

7

In this case, Plaintiff served as a police officer for the Lake County Sheriff's Department. By statute, county police officers are employees of the county. *See id.* § 36-8-10-4(a). Thus, Plaintiff argues that, because he was a county police officer, he is an employee of Lake County for purposes of his ADA claim. In its reply brief, Lake County does not address the ADA claim nor does it reassert that it is not an employer for purposes of the ADA. Lake County offers no argument regarding the interplay between Indiana Code § 36-8-10-4(a) and the definition of "employee" for purposes of the ADA.

In its opening brief, Lake County cites numerous cases holding that, under Indiana state law, a county and its commissioners do not have control over the acts of the sheriff or the sheriff's officers such that a county cannot be held liable for the actions of the sheriff. *See* Lake Cty. Br. 2–3, ECF No. 36 (citing *Jendrzejczyk v. LaPorte County, Indiana*, No. 2:15-CV-300, 2017 WL 3387405, *4 (N.D. Ind. Aug. 4, 2017); *Radcliff v. County of Harrison*, 627 N.E.2d 1305, 1306 (Ind. 1994); *Donahue v. St. Joseph Cty. ex rel. Bd. of Comm'rs of St. Joseph Cty.*, 720 N.E.2d 1236, 1241 (Ind. Ct. App. 1999); *Carver v. Crawford*, 564 N.E.2d 330, 334 (Ind. Ct. App. 1990); *Delk v. Bd. of Comm'rs of Delaware Cty.*, 503 N.E.2d 436, 440 (Ind. Ct. App. 1987)). However, these cases, discussed in more detail below in the context of the § 1983 claim, address the allegedly tortious actions of county or city police officers acting in law enforcement capacities and consider liability for state law claims based on respondeat superior liability or for civil rights claims under 42 U.S.C. § 1983. None of the cases is an employment case, an ADA employment discrimination case, or an employment discrimination case brought by a county police officer. Lake County does not address how Indiana Code § 36-8-10-4(a) affects the holdings of these cases in the context of the ADA claim.

Thus, on this motion to dismiss, Lake County has not presented authority demonstrating that Plaintiff was not an employee of Lake County for purposes of the ADA, and the Court denies Lake County's motion to dismiss Plaintiff's ADA claim.

2.     *The Sheriff's Department*

In its motion, the Sheriff's Department argues that Plaintiff has failed to state a claim under the ADA because the ADA does not allow for mixed motive claims and Plaintiff has failed to plead that the alleged disability was the "but for" cause of his termination.[1] The Court finds that Plaintiff has stated a claim of discrimination under the ADA against the Sheriff's Department.

As noted above, the ADA provides that "[n]o covered entity shall discriminate against a qualified individual *on the basis* of disability in regard to . . . the . . . discharge of employees." 42 U.S.C. § 12112(a) (emphasis added). Prior to the 2008 amendments to the ADA, the statute provided that "[n]o covered entity shall discriminate against a qualified individual with a disability *because of* the disability of such individual . . . ." 42 U.S.C. § 12112(a) (emphasis added) (eff. until Dec. 31, 2008). Considering the pre-amendment version of § 12112(a), the Seventh Circuit held that "a plaintiff complaining of discriminatory discharge under the ADA must show that his . . . employer would not have fired him *but for* his actual or perceived disability." *Serwatka v. Rockwell Automation, Inc.*, 591 F.3d 957, 962 (7th Cir. 2010) (emphasis added). In light of the 2008 amendment to the ADA, the Seventh Circuit has commented that "[i]t is an open question whether the but-for standard . . . announced in *Serwatka* survived the amendment to the ADA." *Silk v. Bd. of Trs., Moraine Valley Cmty. Coll., Dist. No. 524*, 795 F.3d

---

[1] The Sheriff's Department describes Plaintiff's claim as an "ADA retaliation claim." Sheriff's Dep't Br. 11, ECF No. 41. However, Plaintiff alleges a discrimination claim under 42 U.S.C. § 12112(b)(4).

698, 706 (7th Cir. 2015). The Court need not resolve the issue because, at this stage of the litigation, Plaintiff has stated a claim for ADA discrimination under the "but-for" standard.

In arguing for dismissal, the Sheriff's Department reasons that Plaintiff's Second Amended Complaint alleges that the "immediate cause" of his termination was the violation of the Merit Board Rules. The Sheriff's Department notes that Plaintiff alleges that the Merit Board found Plaintiff guilty of violating Merit Board Rules and that Plaintiff admits that Sheriff Buncich had the statutory authority to dismiss county police officers after preferring charges and after a fair public hearing. Thus, the Sheriff's Department reasons that, because Plaintiff has alleged that he was terminated for a reason other than disability, Plaintiff cannot state a claim under the ADA.

However, this reasoning ignores that Plaintiff's lawsuit challenges whether the violations of Merit Board Rules were the real reason for his discharge. That is a factual question that cannot be resolved at this stage of the litigation. Plaintiff alleges that his discharge was based on "the disability (brain cancer) of [his] son, which resulted in substantial medical expenses incurred by the County, prior to his death on June 1, 2016," as well as his support of Martinez in the May 2014 primary election. Sec. Am. Compl. ¶ 14. If Plaintiff can prove the allegations that his son's disability was the reason for the termination of his employment, he will have met the requirements of § 12112(b)(4) and proven "but for" causation. *See Serwatka*, 591 F.3d at 962. At this stage of the proceedings, Plaintiff has adequately pled a Title I ADA claim under § 12112(b)(4), and the Court denies the Sheriff's Department's motion to dismiss the claim.

**B.**      **Rehabilitation Act**

Plaintiff's Second Amended Complaint brings a claim challenging his discharge under

the Rehabilitation Act, 29 U.S.C. § 794(a). The Rehabilitation Act provides:

> No otherwise qualified individual with a disability in the United States, as defined in
> section 705(20) of this title, shall, solely by reason of her or his disability, be excluded
> from the participation in, be denied the benefits of, or be subjected to discrimination
> under any program or activity receiving Federal financial assistance . . . .

29 U.S.C. § 974(a). The Rehabilitation Act incorporates the standards applicable to Title I of the

ADA. *See Brumfield v. City of Chicago*, 735 F.3d 619, 630–34 (7th Cir. 2013) (citing 29 U.S.C.

§ 794(d)). This includes the ADA's prohibition against "denying equal jobs or benefits to a

qualified individual because of the known disability of an individual with whom the qualified

individual is known to have a relationship or association." 42 U.S.C. § 12112(b)(4).

*1.      Lake County*

In its Motion to Dismiss, Lake County addresses dismissal of the Rehabilitation Act

claim with a single sentence: "Further, the Court's analysis of a Rehabilitation Act claim in this

context is analogous to the analysis of a Title VII claim, which would carry the same definition

of 'employee' as the Americans with Disabilities Act." Lake Cty. Br. 4 (citing *Katsiavelos v.*

*Fed. Reserve Bank of Chi.*, 859 F. Supp. 1183, 1183 (N.D. Ill. 1994); 29 U.S.C. § 794a(a)(1); 42

U.S.C. § 2000e(f)).[2]

However, as argued by Plaintiff, the proper defendant for a claim under the

Rehabilitation Act is a recipient of federal financial assistance. *See U.S. Dep't of Transp. v.*

---

[2]  In *Katsiavelos*, a former employee of the Federal Reserve Bank of Chicago brought suit alleging a violation of the
Rehabilitation Act. *Katsiavelos v. Fed. Reserve Bank of Chi.*, 859 F. Supp. 1183, 1183 (N.D. Ill. 1994). In that case,
the court addressed the question of whether the Federal Reserve Bank of Chicago is an entity to which the
Rehabilitation Act applies and concluded that, because the bank is not an "executive agency," the bank is not
covered by the federal sector provisions of the Rehabilitation Act. *Id.* It is unclear how *Katsiavelos* is applicable in
the instant case.

*Paralyzed Veterans of Am.*, 477 U.S. 597, 604–06 (1986). Plaintiff has alleged in his Second Amended Complaint that Lake County is the recipient of federal financial assistance. Sec. Am. Compl. ¶ 5a. Lake County's reply brief does not address Plaintiff's Rehabilitation Act claim and, thus, does not respond to Plaintiff's argument or provide any further support for dismissal of the claim. Finding that Plaintiff has stated a claim against Lake County under the Rehabilitation Act, the Court denies Lake County's motion to dismiss this claim.

2.      *The Sheriff's Department*

Although the ADA and the Rehabilitation Act are very similar, "the Rehabilitation Act prohibits discrimination only if it is 'solely by reason of' a person's disability." *Reed v. Columbia St. Mary's Hosp.*, 915 F.3d 473, 484 (7th Cir. 2019) (citing *Whitaker v. Wis. Dep't of Health Servs.*, 849 F.3d 681, 684 (7th Cir. 2017)); *see* 29 U.S.C. § 794(a). The Sheriff's Department argues that Plaintiff has failed to state a claim under the Rehabilitation Act because Plaintiff has not pleaded that he was terminated "solely" by reason of the alleged disability. The Sheriff's Department contends that Plaintiff's own allegations demonstrate that other factors played a role in his termination, specifically the allegations that the Merit Board found that Plaintiff had violated Merit Board Rules and that the sheriff has the statutory authority to terminate county police officers after preferring charges and after a fair public hearing before the Merit Board.

However, the Sheriff's Department again fails to recognize that Plaintiff's Complaint challenges Defendants' stated reasons for discharging Plaintiff as false. Plaintiff has alleged that the Sheriff's Department receives federal financial assistance, that his discharge was based on "the disability (brain cancer) of [his] son, which resulted in substantial medical expenses incurred by the County, prior to his death on June 1, 2016," and that the disciplinary decisions

and recommendations made by Sheriff Buncich are based on factors other than the merits of the

charges. At this stage of the litigation, Plaintiff is not required to make out a prima facie case

under the Rehabilitation Act but rather must plead facts sufficient to raise the right to relief

above the speculative level. *See Runnion ex rel. Runnion v. Girl Scouts of Greater Chi. and Nw.

Ind.*, 786 F.3d 510, 517–18 (7th Cir. 2015); *see also Twombly*, 550 U.S. at 555. The Court finds

that Plaintiff has sufficiently pled a claim under the Rehabilitation Act and denies the Sheriff's

Department's motion to dismiss the claim.

**C.      42 U.S.C. § 1983**

In the Second Amended Complaint, Plaintiff brings a claim under 42 U.S.C. § 1983 for a

violation of his rights under the First and Fourteenth Amendments to the United States

Constitution. To state a claim under § 1983, a plaintiff must allege "(1) that defendants deprived

him of a federal constitutional right; and (2) that the defendants acted under color of state law."

*Savory v. Lyons*, 469 F.3d 667, 670 (7th Cir. 2006). The First Amendment, applicable to state

and local governments and their officials through the Fourteenth Amendment, prohibits adverse

employment actions against government employees because of their political speech and

association. *See, e.g.*, *Elrod v. Burns*, 427 U.S. 347, 349–50 (1976); *Branti v. Finkel*, 445 U.S.

507, 513–17 (1980); *Rutan v. Republican Party of Ill.*, 497 U.S. 62, 68–76 (1990); *Daza v.

Indiana*, 941 F.3d 303, 308 (7th Cir. 2019). Plaintiff alleges that his constitutional rights were

violated when his employment was terminated because he supported one of Buncich's

opponents—Oscar Martinez—in the May 2014 Democratic primary.

Lake County and the Sheriff's Department each argue that, as a municipality, it cannot be

held liable under § 1983 because Plaintiff has not alleged a municipal policy, practice, or custom,

citing *Monell v. Department of Social Services of City of New York*, 436 U.S. 658, 690 (1978).

*Monell* liability is not a form of respondeat superior; instead a municipality can only be held liable as an entity under § 1983 "when execution of [its] policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury." *Id.* at 694.

To state a claim that a municipality has violated an individual's civil rights under § 1983, a plaintiff must allege that (1) the municipality had an express policy that, when enforced, causes a constitutional deprivation; (2) the municipality had a widespread practice that "is so permanent and well settled it constitutes a custom or usage within the force of law"; or (3) the plaintiff's constitutional injury was caused by a person with final policymaking authority. *McCormick v. City of Chicago*, 230 F.3d 319, 324 (7th Cir. 2000) (citing *McTigue v. City of Chicago*, 60 F.3d 381, 382 (7th Cir. 1995)).

Lake County and the Sheriff's Department focus solely on the first two bases for municipal liability in their motions. They argue that Plaintiff has failed to state a claim for municipal liability because Plaintiff's only allegation of an unconstitutional policy is Sheriff Buncich's compliance with state law (Indiana Code §§ 36-8-10-3(b), 36-8-10-11) and general compliance with state law cannot constitute an unconstitutional local government policy. *See* Lake Cty. Mot. 5–6, ECF No. 36 (citing *Snyder v. King*, 745 F.3d 242, 247 (7th Cir. 2014); *Surplus Store and Exch., Inc. v. City of Delphi*, 928 F.2d 788, 791–92 (7th Cir. 1991); *Whitesel v. Sengenberger*, 222 F.3d 861, 872 (10th Cir. 2000); *Familias Unidas v. Briscoe*, 619 F.2d 391, 404 (5th Cir. 1980)); Sheriff's Dep't Br. 7–8, ECF No. 41 (same).

However, Plaintiff clarifies in his response brief that he is proceeding under the third form of municipal liability, namely that his constitutional injury was caused by a person with final policymaking authority—Sheriff Buncich. *Pembaur v. City of Cincinnati* recognized that "it

14

is plain that municipal liability may be imposed for a single decision by municipal policymakers under appropriate circumstances." 475 U.S. 469, 480 (1986). For a local government to be liable under § 1983, the act that allegedly violated the constitution "must carry out an official policy made by the local government's lawmakers or officials 'whose edicts or acts may fairly be said to represent' the local government's policy." *Burger v. County of Macon*, 942 F.3d 372, 374 (7th Cir. 2019) (quoting *Monell*, 436 U.S. at 694). "In other words, an act is an official local-government policy when the decision to adopt a particular course of action 'is properly made by that government's authorized decisionmakers.'" *Id.* (quoting *Pembaur*, 475 U.S. at 481). Whether an official has final policy-making authority depends on state law. *Pembaur*, 475 U.S. at 483; *Burger*, 942 F.3d at 375 (citing *McMillian v. Monroe County*, 520 U.S. 781, 786–87 (1997)).

Several provisions of Indiana state law, as identified by the parties, are relevant to the inquiry of whether the act of Sheriff Buncich constitutes a policy of Lake County and/or the Sheriff's Department. First, as noted above in the ADA discussion: "A county police force is established in each county. The members are employees of the county, and the sheriff of the county shall assign their duties according to the law." Ind. Code § 36-8-10-4(a). In addition, "[t]he expenses of the county police force are a part of the sheriff's department budget," and "the county fiscal body shall determine the budget and salaries." *Id.* § 36-8-10-4(b).

Second, "[t]he fiscal body of each county shall, by ordinance, establish a sheriff's merit board." *Id.* § 36-8-10-3(a). The statute further provides that the merit board shall consist of five members and that three "members shall be appointed by the sheriff." *Id.* § 36-8-10-3(b).

Third, "[t]he sheriff may dismiss, demote, or temporarily suspend a county police officer for cause after preferring charges in writing and after a fair public hearing before the board, which is reviewable in the circuit court, superior court, or probate court." *Id.* § 36-8-10-11(a).

Finally, a county sheriff in Indiana is an independently elected office established by the Indiana Constitution. *See* Ind. Const. art. VI, § 2; *Donahue*, 720 N.E.2d at 1241; *see also Argandona v. Lake County Sheriff's Dep't*, 2:06-CV-259, 2007 WL 518799, *3 (N.D. Ind. Feb. 13, 2007) (citing Ind. Const. art. VI, § 2; *Markley v. Walters*, 790 F. Supp. 190, 191 (N.D. Ind. 1992)). The powers and duties of the sheriff's department are established by the Indiana State legislature. *See Donahue*, 720 N.E.2d at 1241 (citing *Carver*, 564 N.E.2d at 334); *see also Argandona*, 2007 WL 518799, at *3.

Plaintiff cites Indiana Code §§ 36-8-10-4(a), 36-8-10-4(b), and 36-8-10-11 to argue that Sheriff Buncich was the head of a department of county government, that he had the authority to assign duties to the members of the county police force, and that he was the final decisionmaker in discharging a county police officer for cause. Plaintiff argues that, under *Pembaur*, Indiana state law demonstrates that Lake County and/or the Sheriff's Department should be held liable if it is determined that Sheriff Buncich violated Plaintiff's constitutional rights in terminating his employment. *See Valentino v. Village of South Chicago Heights*, 575 F.3d 664, 675–78 (7th Cir. 2009) (finding on summary judgment that, under Illinois state law, the mayor was the final policymaker on personnel decisions because the evidence indicated that the mayor, either personally or by delegation, made the personnel decision for his office and that he was the de facto policymaker for the village with regard to personnel decisions in his office).

 In reply, the Sheriff's Department argues that the Sheriff's decision-making authority as to discipline is limited by the Merit Board's role under Indiana Code § 36-8-10-11. However,

Plaintiff has also alleged that Sheriff Buncich was the de facto decisionmaker based on his control over the three members he appointed to the Merit Board. *See* Sec. Am. Compl. ¶ 5; *see also Valentino*, 575 F.3d at 675–76.

For the reasons set forth above, the Court finds that Plaintiff has stated a claim for municipal liability under *Pembaur* based on Sheriff Buncich's actions. *See Valentino*, 575 F.3d at 675–76; Ind. Code §§ 36-8-10-3, 36-8-10-11.[3]

In a separate section of its motion, Lake County argues generally that it cannot be held liable for Sheriff's Buncich's actions as a policymaker because Buncich, as sheriff, lacked an agency relationship with Lake County. Indeed, in *Delk*, the Indiana Court of Appeals held that the county "does not have any control over the acts of the sheriff." 503 N.E.2d at 440. The court reasoned that, because the county commissioners do not have the power to control the acts performed by the sheriff or any sheriff's deputy, there is no agency relationship between the county (and its commissioners) and the sheriff. *Id.* And, "the principle of *respondeat superior* cannot provide a basis for the county or the commissioners' liability on either the theory of false imprisonment or the alleged violation of [plaintiff's] civil rights." *Id.*

However, as noted above in the ADA claim, the cases cited by Lake County do not address a discrimination claim in the employment context. In *Delk*, the plaintiff alleged claims of false imprisonment and violations of her civil rights under 42 U.S.C. § 1983 when she was mistakenly arrested and taken to the county jail by a county deputy sheriff. 503 N.E.2d at 438. In *Carver*, a motorist brought a personal injury claim based on injuries he suffered as a result of a

---

[3] In its reply brief, Lake County cites *Indiana Department of Transportation v. Sadler*, 33 N.E.3d 1187 (Ind. Ct. App. 2015), arguing that Sheriff Buncich's decision to terminate Plaintiff's employment in this case was made pursuant to a policy that was already in place. However, *Sadler* is not a § 1983 case and, thus, does not address *Pembaur*. Rather, *Sadler* considers the issue of governmental immunity under the Indiana Tort Claims Act, analyzing whether the governmental entity had engaged in a discretionary function. *Id.* at 1191–92.

collision with an automobile driven by an on-duty sheriff's deputy, and the court held that the county was not liable for the officer's actions. 564 N.E.2d at 331, 334 (citing *Delk*, 503 N.E.2d at 436). In *Donahue*, the plaintiff filed a state law claim in relation to injuries he sustained as an arrestee, and the court held that the county was not liable for the tortious actions of the sheriff department employees. 720 N.E.2d at 1238, 1241 (citing *Delk*, 503 N.E.2d at 440; *Carver*, 564 N.E.2d at 334). In *Radcliff*, the court held that the county was not liable for the claim of false imprisonment made against the county sheriff by the plaintiff who had been transported to a mental health center for evaluation for involuntarily commitment but who was released for lack of probable cause. 627 N.E.2d at 1306 (citing *Delk*, 503 N.E.2d 436). In *Jendrzejczyk*, the plaintiff alleged claims of unreasonable search and seizure, unreasonable use of force, assault, defamation, and false imprisonment, among others, for the actions of various defendants, including officers of the sheriff's department. 2017 WL 3387405, at *1–2. The court held that the county is a separate entity from the sheriff's department and is not responsible for the sheriff's actions. *Id*. at *4 (citing *Radcliff*, 627 N.E.2d at 1306).

Lake County has not explained how the holdings of these cases apply to the instant § 1983 claim brought by an employee county police officer for a First Amendment violation. Lake County has not discussed the cases in light of the state statutes setting forth that county police officers are employees of the county and that the sheriff has the authority to make final employment decisions as to those county police officers. In addition, none of these cases involved a claim of municipal liability under *Pembaur*.

The only case Lake County specifically cites in its motion in relation to the § 1983 claim is *Argandona*, 2007 WL 518799, at *5–6. In *Argandona*, the court concluded that "the Lake County Sheriff's Department, *when acting in its law enforcement capacity*, is neither an arm of

the State nor a mere extension of Lake County. Rather, the Department is a separate municipal entity and subject to suit under § 1983." *Argandona*, 2007 WL 518799, at *5 (emphasis added). However, in the instant case, Buncich, as sheriff, was not acting in a law enforcement capacity. Rather, he was making an employment-related decision. Similarly, in its reply brief, Lake County cites *Hebert v. Porter County, Indiana*, 2:07-CV-91, 2007 WL 2363835, *4 (N.D. Ind. Aug. 14, 2007). But *Hebert* also addresses the actions of sheriff department deputies acting in a law enforcement capacity and does not involve an employment discrimination claim by a county police officer nor a claim for municipal liability under *Pembaur*. Based on the arguments presented in its briefs, Lake County has not presented authority demonstrating that it is not liable for the actions of the Sheriff under *Pembaur*.

As a final matter, Lake County also cites *Argandona* for its holding that that the indemnification claim against the county in that case "does not create obligations that require [the county] to remain a defendant in this matter." 2007 WL 518799, at *5. Here, the parties' supplemental briefing [ECF Nos. 73, 76] also goes to the issue of whether Lake County should remain a defendant based on the indemnification claim. *See Hebert*, 2007 WL 2363835, at *3 n.2 (N.D. Ind. 2007). Because Lake County remains a defendant liable on the § 1983 claim under *Pembaur*, the Court need not reach the issue of whether Lake County should remain in the litigation based on the indemnification claim.

On the arguments before the Court, the Court denies the motions to dismiss Plaintiff's § 1983 claims as to Lake County and the Sheriff's Department.

## D.     Sheriff Buncich—Individual Capacity Claims

Sheriff Buncich argues that the Court should dismiss the individual capacity claims because he is entitled to absolute immunity from suit for the prosecutorial function of bringing

19

the charges against Plaintiff before the Merit Board. Plaintiff responds that, because Sheriff Buncich was not acting in a prosecutorial role but rather was making an employment decision, he is not entitled to absolute immunity.

"Prosecutors may be entitled to either absolute or qualified immunity from civil liability under 42 U.S.C. § 1983 for actions undertaken pursuant to their official duties. Absolute immunity covers prosecutorial functions such as the initiation and the pursuit of a criminal prosecution, the presentation of the state's case at trial, and other conduct that is 'intimately associated' with the judicial process." *Mendenhall v. Goldsmith*, 59 F.3d 685, 689 (7th Cir. 1995) (quoting *Buckley v. Fitzsimmons,* 509 U.S. 259 (1993); *Imbler v. Pachtman,* 424 U.S. 409, 430, 431 n. 33 (1976)). Sheriff Buncich notes that absolute prosecutorial immunity can extend to government officials performing functions analogous to a prosecutor's duties. *See, e.g.*, *Butz v. Economou*, 438 U.S. 478, 515 (1978) ("We also believe that agency officials performing certain functions analogous to those of a prosecutor should be able to claim absolute immunity with respect to such acts.").

However, in *Swetlik v. Crawford*, the Seventh Circuit Court of Appeals held that a vote by a mayor and the Common Council to bring employment related charges was not protected by absolute prosecutorial immunity. 738 F.3d 818, 824–25 (7th Cir. 2013). In *Swetlik*, the mayor of the City of Manitowoc authorized an outside investigation into an incident involving Manitowoc police detective Swetlik and the chief of police. *Id.* at 820, 822–23. The investigators' report ultimately recommended to the mayor and the Common Council that Swetlik be terminated from his employment. *Id.* at 823. The Common Council voted to adopt the recommendation and to bring termination charges. *Id.* After the vote, the investigators were told to prepare formal charges, and, at a subsequent meeting, a majority of the council, including the mayor, voted to

file the charges. *Id.* In the federal lawsuit brought under § 1983, Swetlik alleged that the mayor and the members of the Common Council retaliated against him in violation of the First Amendment by bringing charges against him for his complaints about the chief of police. *Id*. at 824. The defendants raised the defense of absolute prosecutorial immunity. *Id.*

The Seventh Circuit rejected the defense, reasoning that "the defendants' action was an employment decision, not a decision to bring criminal charges." *Id*. The court explained that "[p]rosecutorial immunity applies to prosecutorial actions that are 'intimately associated with the judicial phase of the criminal process.'" *Id*. (quoting *Van de Kamp v. Goldstein*, 555 U.S. 335, 341 (2009)). "The immunity's application depends not on an official's title but on whether the official is, at the time, 'acting as an officer of the court' and on the action's 'relatedness to the judicial phase of the criminal process.'" *Id*. (quoting *Fields v. Wharrie*, 672 F.3d 505, 510 (7th Cir. 2012); *Wilson v. Kelkhoff*, 86 F.3d 1438, 1443 (7th Cir. 1996) ("Absolute immunity is not limited to government officials with the title of prosecutor or judge; officials performing 'functionally comparable' acts in other contexts, such as administrative agencies, are also accorded absolute immunity.")). Finally, the court noted that "prosecutors themselves are not entitled to absolute immunity when they make employment decisions." *Id*. (citing *Lacey v. Maricopa County*, 693 F.3d 896, 930–31 (9th Cir. 2012)). The court also cited *Forrester v. White*, 484 U.S. 219, 229 (1988), which held that a state judge who "was acting in an administrative capacity when he demoted and discharged" a probation officer was not entitled to absolute immunity. *Swetlik*, 738 F.3d at 825.

Indiana Code § 36-8-10-11 provides that "[t]he Sheriff may dismiss, demote, or temporarily suspend a county police officer for cause after *preferring charges* in writing and after a fair public hearing before the board." Ind. Code § 36-8-10-11(a) (emphasis added). The

21

act of an Indiana sheriff preferring charges is analogous to the vote by the mayor and the Common Council in *Swetlik* "to file the charges." *Swetlik*, 738 F.3d at 823. Under *Swetlik*, Sheriff Buncich is not entitled to absolute prosecutorial immunity for bringing to the merit board the charges against Plaintiff as an employee because Sheriff Buncich was engaging in an employment decision and not a decision to bring criminal charges.

In his brief, Sheriff Buncich cites *Balcerzak v. City of Milwaukee*, in which the district court held that a local government official recommending termination of a police officer for misconduct was entitled to absolute prosecutorial immunity for his role in bringing the charges. 980 F. Supp. 983, 987 (E.D. Wis. 1997) (citing *Butz v. Economou*, 438 U.S. 478 (1978)). However, *Balcerzak* predates the Seventh Circuit decision in *Swetlik* and also does not discuss the earlier Supreme Court decision in *Forrester* that state judges are not entitled to absolute immunity when acting in an administrative capacity in relation to employment decisions. Sheriff Buncich also cites cases in which the Seventh Circuit has held that quasi-judicial immunity applies to those prosecuting attorney disciplinary proceedings; but, again, those cases do not address an employment decision and, importantly, are in the context of attorney disciplinary proceedings described as "quasi-criminal" proceedings. *See Kissell v. Breskow*, 579 F.2d 425, 430 (7th Cir. 1978); *Bartoli v. The Attorney Registration & Disciplinary Comm'n of Ill.*, No. 97 C 3412, 1998 WL 100246, at \*3 (N.D. Ill. Feb. 24, 1998), *aff'd by unpublished order*, 202 F.3d 272 (7th Cir. 1999).

The Court denies Buncich's motion to dismiss Plaintiff's claims brought against him in his individual capacity.

**E.      Sheriff Buncich—Official Capacity Claims**

Buncich seeks dismissal of the claims brought against him in his official capacity on the basis that they are redundant and duplicative of the claims brought against the Sheriff's Department. Indeed, official capacity suits "generally represent only another way of pleading an action against an entity of which an officer is an agent." *Kentucky v. Graham*, 473 U.S. 159, 165–66 (1985) (quoting *Monell*, 436 U.S. at 690 n. 55). The Supreme Court explained that "while an award of damages against an official in his personal capacity can be executed only against the official's personal assets, a plaintiff seeking to recover on a damages judgment in an official-capacity suit must look to the government entity itself." *Id*. at 166.

In response, Plaintiff argues that he has sued Buncich in his official capacity as sheriff in order to pursue the injunctive relief of reinstatement. However, because the Sheriff's Department and/or Lake County "can be sued directly for both damages and injunctive or declaratory relief, there is no need to sue [the local official] in [his] official capacity in addition to [the] local government units." *Comer v. Hous. Auth. of City of Gary, Ind.*, 615 F. Supp. 2d 785, 789 (N.D. Ind. 2009) (citing *Graham*, 473 U.S. at 167, n. 14; *Schmidling v. City of Chicago*, 1 F.3d 494, 495 n. 1 (7th Cir. 1993)). Because Plaintiff has named both Lake County and the Sheriff's Department as defendants to his § 1983 claims in this lawsuit, the claims against the sheriff in his official capacity are duplicative and should be dismissed. The Court notes that Buncich was removed from office on August 24, 2017, and that Sheriff Oscar Martinez was automatically substituted in this litigation for the official capacity claims. *See* Fed. R. Civ. P. 25(d). Accordingly, the Court grants the Motion to Dismiss as to the claims brought against Oscar Martinez in his official capacity as Sheriff of Lake County, Indiana.

## CONCLUSION

Based upon the foregoing, the Court DENIES Lake County's Motion to Dismiss Second Amended Complaint Pursuant to Fed. R. Civ. P. 12(b)(6) [ECF No. 36] and GRANTS in part and DENIES in part the Sheriff Defendants' Motion to Dismiss Second Amended Complaint [ECF No. 40]. The Court DISMISSES the claims against Oscar Martinez in his official capacity as Sheriff of Lake County, Indiana.

SO ORDERED on June 1, 2020.

s/ Theresa L. Springmann
JUDGE THERESA L. SPRINGMANN
UNITED STATES DISTRICT COURT